1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES,                    Case No. 6:19-mj-00068-JDP-1

12              Plaintiff,             ORDER DENYING DEFENDANT'S MOTION
                                       TO SUPPRESS
13        v.
                                       ECF No. 16
14   WILLIAM MATTHEWS PENNY III,
                                       ORDER DENYING DEFENDANT'S MOTIONS
15              Defendant.             TO STRIKE

16                                     ECF Nos. 22, 34

17

18

19        William Matthews Penny III ("defendant") faces charges of violating 36 C.F.R. §§ 2.35(c)

20   and 2.34(a)(1) while in Yosemite National Park.  ECF No. 1.  In three pretrial motions, defendant

21   moves: (1) to strike the testimony of United States Park Ranger Steven Isch ("Ranger Isch"),

22   alleging both an inability to conduct effective cross-examination and a violation of the

23   government's discovery obligations, ECF Nos. 22, 34; and (2) to suppress statements made by

24   defendant to Ranger Isch, ECF No. 22.  This court now denies defendant's motions to strike and

25   suppress.

26        **I.      BACKGROUND**

27        On September 25, 2019, the United States filed a criminal complaint against defendant,

28   alleging that, while visiting Yosemite National Park, he had engaged in fighting, threatening, or

1   violent behavior and had been under the influence of alcohol to a dangerous degree, thereby

2   violating 36 C.F.R. §§ 2.35(c) and 2.34(a)(1).  ECF No. 1.  According to the complaint, a group

3   of rangers, including Ranger Isch, were dispatched to the Camp 4 tent campground following a

4   report of an intoxicated man threatening campers.  *Id*. at 1.  When the rangers arrived at the scene,

5   bystanders directed them to defendant, who "was standing near a picnic table and was swaying

6   badly and having difficulty maintaining his balance."  *Id*.  Ranger Isch "asked [defendant] to sit

7   down at the picnic table to avoid falling over," and defendant complied.  *Id.*  Ranger Isch then

8   asked defendant a series of questions, and defendant stated that he had "consumed an entire bottle

9   of whiskey" and "admitted to getting into some type of altercation with visitors in [a] neighboring

10  campsite."  *Id*. at 2.  On July 28, 2020, defendant moved to suppress these statements, arguing

11  that they had been elicited during custodial interrogation in violation of *Miranda v. Arizona*, 384

12  U.S. 436 (1966).  ECF No. 16.  On August 28, 2020, the court held a hearing to resolve the

13  *Miranda* issue, and Ranger Isch testified via Zoom.

14         On the eve of the hearing—August 27, 2020—the government disclosed an email from

15  Ranger Isch dated November 27, 2019, stating that "[t]here was body cam footage but it may

16  have been lost . . . ."  *See* ECF No. 35 at 1-2.  In the email, Ranger Isch stated that some video

17  recordings had been deleted when a new video recording system was implemented.  *See id*.

18  Defense counsel did not question Ranger Isch about the missing video during the suppression

19  hearing.  *See* ECF No. 32.  However, following Ranger Isch's testimony, defense counsel stated

20  that an adverse inference might be warranted due to the loss of the video.  *See id.* at 67-71.

21         On August 31, 2020, the government disclosed an email from Ranger Isch dated that same

22  day, stating, "I never had a body camera until we transitioned to Digital Ally, which appears to

23  have been a few weeks after this arrest."  *See* ECF No. 35 at 2.  Then, on September 2, 2020, the

24  government submitted declarations that provided additional information about the transition

25  referenced by Ranger Isch, namely a changeover by the National Park Service from one bodycam

26  vendor (VieVu) to another (Digital Ally).  *See* ECF Nos. 18, 19, 20.  Thus, it appeared that the

27  email shared by the government just before the hearing had painted an inaccurate picture of

28  certain facts.

On September 3, 2020, defendant moved to strike Ranger Isch's testimony, arguing that defendant had been denied an opportunity to cross-examine Ranger Isch effectively because Ranger Isch had used a copy of his arrest report while testifying. *See* ECF No. 22.  On October 9, 2020, defendant filed a second motion to strike Ranger Isch's testimony, this time arguing that the government had violated its discovery obligations by failing to disclose the absence of body camera footage that contradicted Ranger Isch's initial statements. *See* ECF No. 34.  Based on the disclosure of email communications following the initial hearing and defendant's arguments raised in his motions to strike, the court offered defendant the opportunity to re-examine Ranger Isch.  ECF No. 41.  On November 24, 2020, defendant asked to re-examine Ranger Isch, ECF No. 42, and the court held a hearing on December 17, 2020, during which both defendant and the government questioned Ranger Isch about the lack of bodycam evidence and related email communications.

## II.     ANALYSIS

### First Motion to Strike

The parties disagree on the appropriate framework for evaluating the first motion to strike. Defendant sees the issue as one of confrontation, arguing that "the presence of the report denied the defendant the opportunity for a full and fair cross examination" in violation of the Sixth Amendment.  ECF No. 22 at 2.  The government sees the issue as one of evidence law. *See* ECF No. 27 at 3.  No matter the framework, defendant's motion fails.

The Supreme Court and the Ninth Circuit have not addressed the applicability of the Confrontation Clause in pretrial hearings, and lower courts are divided. *See* Christine Holst, *The Confrontation Clause and Pretrial Hearings: A Due Process Solution*, 2010 U. ILL. L. REV. 1599, 1613-14 (2010).  However, even if the Confrontation Clause applies, it was not violated.  In general, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original); *see also Mattox v. United States*, 156 U.S. 237, 242-43 (1985) (noting that the Confrontation Clause generally precludes the use of out-of-court statements "in lieu of a personal examination and

1    cross-examination of the witness").

2         Here, defendant had more than an adequate opportunity; he cross-examined the witness in

3    two separate hearings.  In the first hearing, defendant questioned Ranger Isch at length, in an

4    exchange covering fifteen pages of the record.  ECF No. 32 at 36-50.  I am unpersuaded that the

5    ranger's possession of his arrest report while testifying at a pretrial hearing via Zoom denied

6    counsel the opportunity for effective cross-examination.  Significantly, defense counsel knew at

7    the time of cross-examination that Ranger Isch had at least some degree of access to his arrest

8    report during his testimony, and defense counsel could have questioned him about it.  Insofar as

9    defendant's argument rests on the importance of "attacking a witness's memory," *see* ECF No. 22

10   at 3, the second hearing gave defendant the chance to do so.[1]

11        As for the rules of evidence, there might again be some question as to their applicability.

12   *See United States v. Brewer*, 947 F.2d 404, 408 (9th Cir. 1991) ("[T]he Federal Rules of Evidence

13   are applicable to motion to suppress evidence proceedings."); *but see* Fed. R. Evid. 104(a) ("The

14   court must decide any preliminary question about whether . . . evidence is admissible.  In so

15   deciding, the court is not bound by evidence rules, except those on privilege."), 1101 (providing

16   that the Rules apply in all "criminal cases and proceedings," but listing as an exception a court's

17   "determination, under Rule 104(a), on a preliminary question of fact governing admissibility");

18   *United States v. Matlock*, 415 U.S. 164, 173-74 (1974) ("That the same rules of evidence

19   governing criminal jury trials are not generally thought to govern hearings before a judge to

20   determine evidentiary questions was confirmed . . . when the Court transmitted to Congress the

21   proposed Federal Rules of Evidence.").  But even if the rules apply, they were not violated.

22        Rule 612 allows a witness to refresh his or her recollection with a writing.  At the first

23   hearing, the court allowed refreshment at the government's request, permitting Ranger Isch to

24   consult his arrest report when he could not remember the precise campsite where he encountered

25   defendant.  ECF No. 32 at 26-27.  Defense counsel objected and requested confirmation "that

26   we're all looking at the same document."  *Id*. at 27.  Once that was confirmed via the incident

27

28        [1] At the second hearing, Ranger Isch testified primarily about his misremembering the
     reasons for the absence of the bodycam evidence.

                                        4

1    report number, defense counsel dropped the objection, noting his belief that "we're all looking at

2    the same paperwork." *Id*. at 28.  There was no inherent error or idiosyncrasy, contrary to

3    defendant's suggestion, in "the witness having his report and other materials available to him in

4    hard copy." *Id*. at 67.  A trial court "has wide limits of discretion in its decisions to permit the

5    prosecution to refresh the memory of a witness," a discretion that is abridged only in the face of

6    "clear injustice." *United States v. Mkhsian*, 5 F.3d 1306, 1313 (9th Cir. 1993) (quotations and

7    citations omitted).  The court agrees with the government that "it is neither unusual nor improper"

8    for an officer to refresh his recollection of specific details using his arrest notes. *See United*

9    *States v. Baker*, 424 F.2d 968, 970 (4th Cir. 1970).  The fact that the witness consulted his own

10   hard copy of the arrest report during the Zoom hearing, subject to confirmation that everyone was

11   looking at the same document—instead of the government using Zoom's screenshare function to

12   display the report to everyone—is perhaps a minor, COVID-driven departure from usual practice,

13   but it is not a "clear injustice."[2]

14        Moreover, the evidence shows that Ranger Isch testified from his memory and did not

15   merely recite his report. *See* ECF No. 27 at 4.  Much of Ranger Isch's testimony at the first

16   hearing concerned issues not addressed in the arrest report—such as the duration of his

17   interaction with defendant and the specific words he used—and consulting the report could not

18   have provided a basis for his answers.  The record lacks other evidence indicating adherence to

19   the report—such as pauses to read or mirroring language—and instead suggests reliance on

20   memory.  Any "isolated instances" in which Ranger Isch might have glanced at his report, *see*

21   *Mkhsian*, 5 F.3d at 1313, do not provide a basis for striking his testimony.

22        ***Second Motion to Strike***

23        In the second motion to strike, defendant argues that the court should strike Ranger Isch's

24   testimony because of the government's alleged failure to comply with the Jencks Act and Federal

25   Rules of Criminal Procedure 26.2,[3] and also because of alleged violations of the government's

26

27        [2] It might also be significant that defendant did not raise his objection, as currently
     framed, during Ranger Isch's testimony.

28        [3] Rule 26.2 applies to suppression hearings.  Fed. R. Crim. Pro. 12(h).

1   obligations under *Giglio v. United States*, 405 U.S. 150 (1972), and of defendant's due process

2   rights, both as to the evidentiary issues raised in the motion and cumulatively for all issues

3   discussed in this order.

4          As an initial matter—and as defendant seemed to concede at oral argument—there is no

5   violation of the Jencks Act or Rule 26.2 where, as here, the central issue is the non-existence of a

6   video, rather than failure to disclose one.  *Cf. United States v. McDaniel*, 17 M.J. 553, 554

7   (A.C.M.R. 1983) (holding that blank tapes that did not contain recorded testimony were not

8   statements under the Jencks Act and that the government could not produce what never existed).

9          This leaves defendant's arguments based on *Giglio* and on his fundamental due process

10  rights.[4]  *See* ECF No. 34 at 5-6.  Defendant's argument seems to be based on a claim that, had he

11  known that Ranger Isch's 2019 email was inaccurate, he could have cross-examined Ranger Isch

12  more effectively during the hearing on August 28, 2020.  However, based upon these concerns

13  raised in defendant's second motion to strike, the court permitted defendant to re-examine Ranger

14  Isch, and even to conduct a re-cross during the re-examination hearing.  Therefore, defendant was

15  able to rectify any detrimental impact created by the initial lack of timely disclosure.  At this

16  point, there is no reasonable basis to conclude that any limit on defendant's ability to cross-

17  examine effectively at the first suppression hearing would impact the outcome of trial.  Therefore,

18  there has been no violation of defendant's due process rights.  *See Giglio*, 405 U.S. at 154-55.

19          ***Motion to Suppress***

20          An officer must give *Miranda* warnings before interrogating someone who has been

21  "taken into custody or otherwise deprived of his freedom of action in any significant way."

22  *Miranda*, 384 U.S. at 444.  To determine whether a defendant was "in custody" for *Miranda*

23  purposes, "a court must, after examining all of the circumstances surrounding the interrogation,

24  decide whether there was a formal arrest or restraint on freedom of movement of the degree

25  associated with a formal arrest."  *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002).  The

26

27          [4] The parties do not address whether the government might have fallen short of its
    discovery obligations under Local Rule 440(a) in failing to disclose Ranger Isch's email

28  communications within fourteen days of arraignment.

1  inquiry is an objective one: the court must determine whether "the officers established a setting

2  from which a reasonable person would believe that he or she was not free to leave." *Id*. at 973-

3  74.  The list of factors that make up "all of the circumstances" is not exhaustive, but can include

4  "the language used to summon the individual," "the extent to which the defendant is confronted

5  with evidence of guilt," "the physical surroundings of the interrogation," "the duration of the

6  detention," and "the degree of pressure applied to detain the individual." *Id*. at 974.

7        While the circumstances here are unusual, the available evidence—including both the

8  arrest report and Ranger Isch's subsequent testimony—does not suggest an objective degree of

9  restraint associated with a formal arrest.  *See generally* ECF No. 27-3 at 2-4; ECF No. 32.

10  Ranger Isch used permissive, not mandatory, language; both the arrest report and Ranger Isch's

11  testimony suggest that he "asked" defendant to sit out of a fear that defendant was too intoxicated

12  to stand, and there is no evidence to the contrary.  *See* ECF No. 27-3 at 3; ECF No. 32 at 30.  The

13  physical surroundings did not suggest restraint: Camp 4 is open terrain—moreso than many other

14  campgrounds—and one could wander in any direction from any given campsite.  ECF No. 32 at

15  24.  Defendant was confronted by only two rangers, while others were "some distance away,

16  certainly out of earshot."  ECF No. 32 at 35.  The interaction was in public, and the episode was

17  brief: "just a few minutes," according to Ranger Isch.  *Id*.  No formal restraints were used.  On the

18  whole, the interaction was more akin to the routine traffic stops discussed by the Supreme Court

19  in *Berkemer v. McCarty*, 468 U.S. 420, 435-41 (1984)—to which *Miranda* warnings do not

20  apply—than to a formal arrest.  Accordingly, defendant was not in custody,[5] and his motion to

21  suppress must be denied.  ECF No. 16.

22        [5] While determining custody for *Miranda* purposes is fact-specific, our result accords with

23  how previous cases in our circuit have treated such questions in similar contexts.  Like the initial
   interaction in *United States v. Lehman*—another *Miranda* case originating in Yosemite National

24  Park—this is a case in which there "was nothing about the apparently very open and public
   location to suggest restraint or coercion."  No. 6:11-MJ-00108-MJS, 2012 WL 662464, at *3

25  (E.D. Cal. Feb. 28, 2012).  In *Lehman*, it was only after additional rangers arrived on the scene,
   after defendant was escorted away from his vehicle, and after rangers began searching the vehicle

26  and found evidence of marijuana that an obligation to Mirandize the defendant arose.  *Id*.  And,
   like *United States v. Basher*—in which officers questioned a man at a dispersed campsite in a

27  national forest and the Ninth Circuit held that he was not in custody—it does not appear that
   defendant's "movements were significantly curtailed."  629 F.3d 1161, 1166 (9th Cir. 2011).

28

*Overall Effect*

Finally, defendant has raised the issue of whether the cumulative effect of all of the errors raised in his evidentiary motions violates due process.  Again, defendant fails to address whether this argument is applicable to suppression hearings, but it appears that such a due process violation can only be shown when multiple errors result in a "fundamentally unfair" trial.  *See United States v. Preston*, 873 F.3d 829, 846 (9th Cir. 2017).  As discussed above, any errors resulting from untimely disclosure by the government were rectified in the second suppression hearing.  Since defendant was provided with the impeachment information concerning Ranger Isch's testimony on the use of body cameras and afforded a second opportunity to question Ranger Isch, and since the court has found no *Miranda* violation or foundation to strike with regard to Ranger Isch's referencing of a report, it is unlikely that these alleged errors would have a material impact on the ultimate outcome of this case, let alone such an outsized impact that it would render any subsequent trial "fundamentally unfair."  *See id*.

For the foregoing reasons it is hereby ordered that:

1.  defendant's motions to strike, ECF Nos. 22, 34, are denied; and

2.  defendant's motion to suppress, ECF No. 16, is denied.

IT IS SO ORDERED.

Dated:    January 12, 2021                              _____

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

8